Good morning, Your Honors. May it please the Court, Sai Vandana Peterson from the Federal Public Defender's Office on behalf of Petitioner Appellant Marcus Lancaster. I'd like to reserve four minutes for rebuttal, and I'll watch the clock. And I thank the panel for the opportunity to argue this case today. I'll begin by explaining why Mr. Lancaster's First Amended Petition should be deemed timely filed, and then address the denial of a motion to stay and obey that petition under Rhines v. Weber. This Court should find Mr. Lancaster's First Amended Petition was timely due to extraordinary circumstances outside his control that warrant equitable tolling based either on Magistrate Judge Mark Goldman's clear intent that was not borne out by his successor judge, or alternatively, due to Magistrate Judge's inadvertence. And I'll explain both. The first avenue is that Judge Goldman's report and recommendation and the orders preceding it and following it all show that his notion of equity did not operate with specific start and stop dates, but rather in a way that would deem a full pleading the First Amended Petition to be timely filed. That's because the harm that he identified in his report and recommendation that came after a full evidentiary hearing on this issue of equity didn't just identify a harm stemming from a set date, for example, a date on which records were turned over to Mr. Lancaster, but rather they identified a set of harms stemming from Mr. Lancaster's specific circumstances and the case as a whole, which is what Holland v. Florida, the Supreme Court, calls on judges to to do, to look at it in the totality of the circumstances. He identified Mr. Lancaster's He was 16. He was uneducated. His mother had hired an attorney just two months after his sentencing to represent him through his direct appeal, his state habeas, and his federal habeas, but she ran out of money after his direct appeal, and so that attorney stopped representing Mr. Lancaster, but didn't tell him so, and withheld his records. So it's a full compendium of inequities that Judge Goldman's R&R is talking about and which I argue he is purportedly addressing when he crafts this equitable remedy. So the remedy that was intended should have addressed all of these harms such that when his first amended petition was filed with the help of counsel for the first time ever, it would have been deemed timely filed. Alternatively, if we are to assume that Judge Goldman didn't have that intent when he crafted, when he identified these harms and crafted the remedy. So are you talking about the September 4 order? Yes, that's right, Your Honor. I'm, well, I'm talking about a series of orders. I'm talking about the R&R that was issued, I believe, on August 31st, which is, I believe, the Friday before Labor Day weekend, and then on September 4th, the Tuesday, Judge Goldman expressly orders that the appointment of counsel should continue even though the evidentiary hearing for which they were first appointed was over, and then directs them sua sponte to file a first amended petition, and then they do. They do that after a series of requests for time that were unopposed and granted with the full knowledge that they needed that time to investigate, receive records, review those records that had nothing to do with the two, the only two claims that would otherwise have been pending in this lawsuit. There's just two claims that were exhausted that were part of this litigation. If we are to otherwise fall back on that, that petition that was filed by Mr. Lancaster when he was pro se. Can you just talk about what exactly about the September 4th order was misleading for your, for your client? Misleading in the sense that it would mislead him into believing that these, the petition would be timely whenever filed, that the claims in the petition would be timely whenever filed. Sure, Your Honor, and I will explain what specifically about the September 4th order, but again, I will emphasize that no order should be taken in a vacuum, in isolation, but seen in the totality of the circumstances, so with the orders preceding it as well. So the specific parts of the September 4th order are that the appointment of counsel should continue, and that counsel is directed to file a first circumscribing counsel's ability to raise new claims, and the orders that came before and after, I would argue, show that Judge Goldman didn't intend to circumscribe their ability to raise new claims, and that's because he had effectively barred counsel and Mr. Lancaster from raising any new claims throughout the pendency of the evidentiary hearing and the equitable tolling litigation, so to speak, and that was all the way from June 2011, when Mr. Lancaster first sought leave to amend, until that September 4th order, when the court effectively said, I'm willing to entertain amendment now. I wasn't before, but I am now, and that's a fact-finding that Judge Abrams, who came after Judge Goldman, expressly made in his R&R from 2019, that was not objected to, so I think that's an undisputed fact, what the import of Judge Goldman's actions was with respect to barring any amendment prior to September 4th. During what critical periods was Mr. Lancaster without counsel? So he was without counsel all the way up until November 2011, when my office, the Federal Public Defender's Office, was first appointed, and he was without counsel from his direct appeal, which I believe was filed in 2008 or 2009, up until 2000, towards the end of 2011, but again, the harm in this case isn't specific to him being without counsel for a set period of claims that he was entitled to raise, because he should have had the ability to amend before someone told him, you're now out of time, and that's the alternative basis that I was talking about. If you don't see that Judge Goldman intended all along to find his first amended petition timely, this inadvertence, which I'm describing, is what your honors have also, I think, identified. It's the period of time during which he was unintentionally, I think, barred from amending, and that's from June 2011, when he first sought leave to amend, until the evidentiary hearing was completely done and over with, which I would say is actually August 31st, 2012, when the District Court accepted the findings of the evidentiary hearing that the magistrate judge made, and that's about a 14-month period, which would render his first amended petition timely, if you're going to calculate it in terms of start and stop dates, which courts, I believe, did do up until a certain point, but they also crafted equitable remedies without looking at it as a start and stop clock that statutory tolling kind of looks at it. Can you tell us which substantive claims, then, you contend are still alive? Yes, your honor. So, there's at least five claims that were dismissed solely on the basis of timeliness, so they were never heard on the merits in the District Court, and those include Mr. Lancaster's instructional error about a critical question the jury raised on intent. You weren't on bad intent. You weren't on bad intent, it's alive. Yes, that's right, and also the Strickland claim and chronic claim, so the ineffective assistance of counsel claim and absence of counsel claim that arise from that predicate, that counsel was absent on the day the jury raised that critical question about intent. It also includes a cumulative error claim that I think is important in this case because both ineffective assistance of counsel is supposed to be considered in a cumulative context when looking at prejudice, but also the myriad errors in this case, I think, even if a single error is not prejudicial on its own, the cumulative effect of them are such that he was sentenced to life for an attempted first-degree murder conviction, and there's two claims that actually weren't addressed at all by Judge Abrams in his magistrate judge's R&R. They were neither denied on timeliness nor on the merits, so they were left out altogether, and that includes the critical claim of ineffective assistance of counsel essentially for failing to object to a faulty competency report that was made after a cursory phone conversation through the glass in a jail environment, and overlooking the much more thorough competency evaluations that existed, and perhaps more egregiously, agreeing that counsel's client was not incompetent, that he was playing games, that he was malingering, even though there was evidence in the record that counsel possessed to the contrary, that he was not malingering, and so I think that that claim is important, and then there's another claim that wasn't addressed on timeliness or the merits, and that is ineffective assistance of counsel as well, but stemming from failure to retain a gunshot residue expert to explain the critical fact that because no gunshot residue was found on Mr. Lancaster or the vehicle he was in immediately after his arrest and after the shooting, that was a significant finding. Instead, counsel stipulates that that absence of gunshot residue actually means nothing. She tries to argue it and walk it back later on, but is foreclosed from doing so because she had entered into this stipulation, so that's the other component of the IAC claim that was neither addressed on the merits or on timeliness, perhaps inadvertently. I'm troubled by the fact that there were a number of extensions granted, and that despite this judicial generosity, and that may be an overstatement, that we're still here. Twenty years later, we're still arguing over whether his initial trial and conviction were valid. I mean, something fell apart here, and I'm concerned about our ability or wisdom in undoing these 20 years. Yes, Your Honor, and if I understand your concern correctly, I think the passage of time only goes to show how prejudicial this timeliness finding was for Mr. Lancaster because he has been relying for 20 years or however long on the idea that because the court was generous, as you put it, or expressly granted these extensions of time with the understanding of what would happen next, undoing his expectation and perhaps the court's intention, we don't know because that judge retired and a new judge replaced him, but this isn't Mr. Lancaster relying on a new judge to come and fix, let's say, a mathematical error that the first judge made, but rather he's relying on a second judge to honor the equitable findings of a first judge. So I think his reliance in that sense is even more justifiable than, say, the petitioner in Sosa, Sosa v. Diaz, who had a second judge come in and say the first judge actually calculated the ad hoc clock wrong. I'm going to fix it, and under the new calculation, you're untimely. So that was a little bit different, and even in that case, this court found that he was entitled to equitable tolling. Can you tell me why the state petition to exhaust the claims wasn't filed until a week after the first amended petition was filed in June 2013? Sure, Your Honor. Typically, the practice at that time was to seek permission from the federal court to go back to state court to exhaust claims. The same claims that were presented in the federal petition were presented in the state petition, so the same constraints of time that are exhaustively specified in the EOTs, and they really stem from the inability to get things like records, mental health records and juvenile court records that's in the EOTs. Those would have stymied counsel's efforts to complete the petition and get it filed in state court as well. So really, that seven days is still an exercise of reasonable diligence, and the standard here is not maximum feasible diligence, but just reasonable diligence, and that was reasonable and normal under the circumstances of this case. All right, counsel, you wanted to save four minutes, and you've used it up, but I'll give you some at the end. Thank you, Your Honor. Good morning, and may it please the Court. Deputy Attorney General Shira Markovich on behalf of Respondent the Warden. I'd like to just take a step back and give a general overview of this case, because it was litigated for decades in the district court. So following an evidentiary hearing on timeliness, petitioner was awarded 15 months of equitable tolling. As a result, the 10 claims asserted in his 2011 facially untimely petition were deemed timely. Despite the litigation over the timeliness of the 2011 petition, petitioner elected to assert 14 new claims and subclaims over two years later. The district court dismissed six of those claims and subclaims as time barred, and in order to render those claims timely, petitioner must show both entitlement to additional equitable tolling and that his 2013 rind stay was wrongly denied. Here, petitioner cannot show that he is entitled to equitable tolling. I'd like to address the allegedly misleading court orders first. With respect to the January 2012 order, that order had no impact whatsoever on the new claims asserted in the amended petition. Petitioner requested a motion to stay and amend, adding the eight claims asserted in the original petition that he himself went to exhaust. Again, the January order had no impact whatsoever on the new claims that were dismissed as untimely. With respect to the August 3, 2012 report and recommendation, that order specifically identified the September 29, 2010 date as the date that the impediment to petitioner filing his federal habeas petition was lifted. Equitable tolling requires some sort of impediment. Petitioner said that it was appellate counsel's misconduct, and the court found that, yes, appellate counsel did commit misconduct, and petitioner received an equitable remedy for that misconduct. And that remedy was that his original petition, which was facially untimely, was deemed timely. So he got equitable tolling to render his ten claims timely. With respect to the September 4 order, all the court did was order that petitioner, with the benefit of counsel, perfect his newly found timely claims that were already asserted in the original petition. There was absolutely no indication from either the court or petitioner that he was intending to assert 14 new claims, particularly after an evidentiary hearing, to determine the timeliness of the petition filed two years prior. With respect to the Rhinestay issue, the procedural arguments are moot in this case because the district court ultimately did weigh in on the propriety of the Rhinestay. So the district court would simply reissue the same order it's already issued. With respect to the substantive no good cause finding, it appears petitioner relies on ineffective assistance of counsel to support that. First, it's not clear that ineffective assistance of counsel can constitute good cause in a Rhinestay context. Both Blake and Dixon focus on post-conviction counsel or state habeas counsel's misconduct. But even assuming that ineffective assistance of appellate counsel could constitute good cause for a Rhinestay, petitioner failed to assert any facts to support an ineffective assistance of counsel claim and simply didn't show a nexus between any ineffective assistance of counsel and his inability to exhaust these new claims. Indeed, petitioner went to state court and exhausted his eight unexhausted claims asserted in the original petition that were ultimately found to be timely. In short, it was petitioner's decision to assert new claims after an evidentiary hearing on timeliness that resulted in the claims being denied and dismissed on timeliness grounds. The good cause standard is notoriously a squishy one. It is. Given the potential confusion or potential for confusion created by the various orders and the failure to explicitly address timeliness, is there room for a finding of good cause that would have allowed him to present all of his claims rather than most of his claims? No. And that's because petitioner was represented by counsel at the time that he had filed the 14 new claims and subclaims. There seems to be a lot lacking in the assistance that he actually received at all levels. I think the federal public defender represented him and continues to represent him well. And the federal public defender was appointed in 2011. And they do good work. And the statute of limitations expired in May 2012. And his federal habeas counsel, who ultimately represented him on state habeas, did an amazing job at the evidentiary hearing, won him equitable tolling. I don't believe that there's any room in the good cause standard here simply because there's simply no nexus between any conduct that occurred before the federal public defender was appointed and his failure to exhaust claims. Again, petitioner on his own went and exhausted eight claims. These claims included ineffective assistance of appellate counsel, ineffective assistance of trial counsel, meaty Crawford claims. And petitioner did that all on his own without counsel. There simply is no room here for any assertion that these 14 new claims and subclaims couldn't have been exhausted earlier. Although, in a way, that cuts both ways. He certainly was diligent. Yes. Respondent has never contended that he wasn't diligent in attempting to exhaust the eight unexhausted claims asserted in the original petition. That's true. The troubling case. I would push back a little bit on any concern that the court has. Again, acknowledging that state appellate counsel withheld his files and was found to have committed misconduct, petitioner received an equitable remedy for that conduct. Respondent had contended that the original petition was untimely, and petitioner, in this case, received much more than many petitioners do when litigating a federal habeas petition, including the appointment of counsel, an evidentiary hearing on his equitable tolling claim. He actually received equitable tolling, and he received the benefit of counsel to perfect his timely claims. And for all these reasons, I would respectfully request that the judgment be affirmed. All right. Thank you, counsel. We'll give you a few minutes. Give her four minutes. Thank you, Your Honor. I want to start by clarifying a point that I think might have become a little muddied inadvertently. The good cause standard for finding entitlement to a rind stay is different from finding that an extraordinary circumstance warrants equitable tolling for a timeliness finding. And I will touch on the rind stay, the entitlement to a rind stay, really briefly. Mr. Lancaster was – it was an abusive discretion for the district court to deny a rind stay for the June 10, 2013 petition because Mr. Lancaster repeatedly and stated uncontestedly that he lacked state habeas counsel throughout. And the lack of state habeas counsel has nothing to do with his ineffective assistance of direct appeal counsel, but the absence of state post-conviction counsel is sufficient to find that good cause is satisfied. He does need to show that his claims are not plainly meritless, and he does need to show that he was not intentionally dilatory, but neither of those two issues are contested in this appeal. Just to make sure I understand, is your argument that the fact that he was pro se alone – is the argument that that's enough to show good cause? Yes, Your Honor. And Dixon versus Baker and Blake versus Baker all make that expressly clear, that ineffective assistance of counsel is different from the absence of post-conviction counsel. You can have post-conviction counsel who's ineffective, and in which case you need to prove up that allegation with documents, with evidence. But if you don't have counsel and post-conviction altogether, you can't really prove the absence of – I guess I'm wondering how that squares with our holding in Wooten that Ryan's stays are for limited circumstances, and it would seem that somebody being pro se is not – Absolutely, and I think that this court in Dixon was concerned about that floodgates issue. What about opening the floodgates to all sorts of pro se litigants? But, you know, I think that even the Supreme Court's concurring opinions in Ryan's say that good cause is the least important of three considerations. They really focus on whether a litigant is intentionally dilatory, in which case they are not worthy of a Ryan stay. They are concerned about whether their claims are potentially meritless, in which case they're not worthy of a Ryan stay. They're not as concerned about this issue of good cause, which, as Your Honor pointed out, is a sticky issue. They don't want district courts to get mired in that and then deny Ryan stays, which in this case was an abuse of discretion to deny it solely on that basis. And as I understand it here, we don't really have a contention that Lancaster himself was not diligent in trying to press his claims. No, there's no such contention, and there's no contention that his claims lack merit. In fact, in granting ACOA, this court found that some of his claims actually do have merit, potential merit, enough to pass that low threshold. I just want to wrap up by, you know, summarizing what the Supreme Court said in Holland v. Florida on this issue of equitable tolling, that AEDPA's statute of limitations, a federal issue here, is subject to a very strong rebuttable presumption in favor of equitable tolling, much more so than in cases involving tax collection or land ownership, where equity is also a remedy. Reviewing this record de novo, which is the standard of review here, with the flexible case-by-case approach, the specific circumstances in this case warrant equitable tolling such that his First Amendment petition should be timely filed. And with that, I see I am out of time, unless this court has any further questions. Does anyone have any questions? No. All right. I thank both counsel for their excellent argument today. Lancaster v. Davis will be submitted, and this session of the court is adjourned for today. Thank you, Your Honor. All rise. This court for this session stands adjourned.
judges: WARDLAW, THOMAS, Rosenthal